Watson v Roanoke Is. Historical Assn.

2026 NY Slip Op 02949

May 12, 2026

Appellate Division, First Department

Webber, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Courtney Watson, Respondent,

v

Roanoke Island Historical Association, Defendant, William Ivey Long, Defendant-Appellant.

Supreme Court, Appellate Division, First Judicial Department

Decided and Entered: May 12, 2026

Index No. 952266/23|Appeal No. 5690|Case No. 2025-01773|

Troy K. Webber

Ellen Gesmer John R. Higgitt Marsha D. Michael Margaret A. Chan

Kraus & Zuchlewski, LLP, New York (Pearl Zuchlewski of counsel), for appellant.

Berke-Weiss Law, PLLC, New York (Alexandra Berke and Melissa Romain of counsel), for respondent.

Defendant William Ivey Long appeals from an order of Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about March 7, 2025, which denied his motion to dismiss the complaint as against him.

Webber, J.P.

[*1]

Plaintiff asserts claims under the Adult Survivors Act (ASA) (CPLR 214-j). The ASA is a revival statute enacted in 2022 that was to provide an 18-month window during which an adult plaintiff could bring an action for injury "suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law."

Plaintiff alleges that during the summers from 2000 through 2003, he worked in the wardrobe department of Roanoke Island Historical Association (RIHA), where defendant Long also worked. According to plaintiff, during that period there were numerous instances where Long committed acts of sexual misconduct toward plaintiff. The most egregious occurred in 2002, when Long engaged in nonconsensual sex with plaintiff while plaintiff was intoxicated. Plaintiff alleges that six years later, in 2008, after not having had any contact with Long, he briefly encountered Long in a public costume shop where Long grabbed plaintiff's shoulders and touched plaintiff's cheeks.

Specifically, the complaint alleges:

"57. Long grabbed Watson by both of his shoulders, put his face inches from Watson's face and touched Watson's cheeks with both hands, with the intimacy of a grandmother greeting her grown grandchild, saying words to the effect of - My! Don't you look great. You've finally gone through puberty!

"58. Long then winked at Watson and walked away.

"59. Watson went back to his office to collect himself, as the encounter had triggered extreme anxiety from being face to face with and physically accosted by his rapist."

According to plaintiff, the encounter caused him to suffer extreme anxiety to the point that he was shaking and had to leave work early. It is this incident for which plaintiff asserts a cause of action based on the criminal offense of forcible touching (Penal Law § 130.52 [1]) against Long and a cause of action for intentional infliction of emotional distress (IIED) against both Long and RIHA.FN1

Defendant moved pursuant to CPLR 3211(a)(7) to dismiss the complaint, arguing that plaintiff failed to satisfy the elements of forcible touching, and that without a timely underlying sexual assault claim, the IIED claim also failed. Plaintiff opposed, arguing that based on the circumstances, Long's grabbing of his shoulders and touching of his cheeks, bringing their faces inches from one another, satisfied the elements of the forcible touching statute, particularly in light of Long's past sexual assault of plaintiff. Plaintiff argued that his allegations of sexual assault and forcible touching were sufficient to allege his IIED claim.

[*2]

Following oral argument, Supreme Court found that given the context of plaintiff's allegations that Long raped him in 2002, the contact alleged by plaintiff in 2008 was "not consensual" because it "was not something that the plaintiff was looking for and was avoiding at all costs." The court reasoned that the "grabbing of the shoulders in that context to show that [Long] has superiority and . . . was reliving the various allegations that occurred can give rise to a forcible touching." Thus, according to Supreme Court, it could not "be said as a matter of law . . . that [Long's] grabbing of [plaintiff's] shoulders and reliving the past events is not a forcible touch."

The court also permitted the IIED claim to move forward because the revival of the forcible touching claim under the ASA would revive any logically flowing claims for damages.

We find that Supreme Court erred in denying defendant Long's motion to dismiss the complaint pursuant to CPLR 3211, as defendant established that plaintiff's allegations do not "fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Plaintiff failed to properly allege facts sufficient to establish a tort that would constitute forcible touching under Penal Law § 130.52(1). Long's alleged acts of grabbing plaintiff's shoulders and touching his cheeks "with the intimacy of a grandmother greeting her grown grandchild" were not, under the circumstances, sexual or intimate in nature, as required by the statute.

Penal Law § 130.52(1) was enacted in 2000. It states that "a person is guilty of forcible touching when such person intentionally, and for no legitimate purpose forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire." "[F]orcible touching includes squeezing, grabbing or pinching" (Penal Law § 130.52).

"The 'impetus' for the [new] crime of forcible touching . . . was 'a notorious series of forcible touchings of the sexual parts of women walking through Central Park' that took place less than two weeks before the legislature acted (see William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 130.52 at 234; see also Budget Report on Bills, Bill Jacket, L. 2000, ch. 1 at 3 [remarking that the creation of the new crime of forcible touching was a 'response to the recent Central Park 'Wilding' ' ]" (People v Guaman, 22 NY3d 678, 684 [2014]).

This Court, as well as others, has defined "intimate part" as "sufficiently personal or private that it would not be touched in the absence of a close relationship between the parties" (People v Sene, 66 AD3d 427, 427 [1st Dept 2009], lv denied 13 NY3d 941 [2010]). "Since intimacy is a function of behavior and not merely anatomy, the matter and circumstances of the touching should also be considered" (id. at 427-428 [internal quotation marks omitted]).

[*3]

While the statute does not require a touching to be "committed for the purpose of gratifying sexual desire" (Matter of Ibn Abdus S., 91 AD3d 428, 429 [1st Dept 2012]), it does require the touching of a "sexual or other intimate part" (Penal Law § 130.52). When the body part is not obviously intimate, the circumstances of the case must contextualize the encounter as sexual or intimate. The touching of nonsexual body parts, standing alone, may not qualify as "sexual contact" unless the touching is accompanied by circumstances that elevate the conduct to that of a nonconsensual act of intimacy or that involve the sexual gratification of the actor (see Sene, 66 AD3d at 427-428 citing People v Graydon, 129 Misc 2d 265, 268 [Crim Ct, NY County 1985]); Morrison v Scotia Capital [USA] Inc., 2023 WL 8307930, *3, 2023 US Dist LEXIS 214277, *6-7, [SD NY, Dec. 1, 2023, No. 21-CV-1859 (SHS)]; Rapp v Fowler, 2022 WL 1997176, *2, 2022 US Dist LEXIS 100856, *3 [SD NY, June 6, 2022, No. 20-CV-9586 (LAK)]).

Plaintiff's shoulders and cheeks did not constitute "sexual or intimate parts" that were "sufficiently personal or private that [they] would not be touched in the absence of a close relationship between the parties" (Sene, 66 AD3d at 427). Thus, Long's acts of grabbing plaintiff's shoulders and touching his cheeks were not, under the circumstances, sexual or intimate in nature, as necessary to state a claim for forcible touching (Penal Law § 130.52[1]).

The dissent cites numerous cases where courts have held that when evaluating the factual allegations of Penal Law Article 130 offenses, parts of the body that are not generally considered erogenous may constitute "intimate" parts of the body (Sene, 66 AD3d at 427-428; Morrison, 2023 WL 8307930, *3, 2023 US Dist LEXIS 214277, *6; Aguilar v Wishner, — AD3d —, 2025 NY Slip Op 07265 [2d Dept 2025]; People v Mechebek, 80 Misc 3d 130 [App Term, 1st Dept 2023], lv denied 40 NY3d 1081 [2023]; People v Lee, 83 Misc 3d 1253[A], *2 [Sup Ct, NY County 2024]; People v Dunkley, 79 Misc 3d 703, 705-706 [Sup Ct, NY County 2023]; Graydon, 129 Misc 2d at 268-269; People v Belfrom, 124 Misc2d 185, 188 [Sup Ct, Queens County 1984]). However, all of the cases cited by the dissent involved contemporaneous sexualized circumstances that are not present here.

[*4]

Aguilar, one of the cases relied upon by the dissent, does not suggest a different result (— AD3d —, 2025 NY Slip Op 07265). In Aguilar, during a medical examination to determine the cause of the plaintiff's back pain, the defendant physician instructed the plaintiff to remove the examination gown she was wearing, position herself on a step stool while bent over an examination table, clad only in underwear, while he stood behind her within mere inches of her buttocks and placed his hands on her uncovered waist while pressing his two thumbs onto her lower back. The plaintiff alleged that it was her perception when she glanced backwards that the defendant was "enjoying himself." The Court held that the alleged nonconsensual touching could still qualify as a predicate for an action pursuant to the ASA since "the broader facts, manner and circumstances of the touching or sexual contact involve[d] intimacy or the alleged sexual gratification of the abuser" (id. at *1). Here, such broader facts and circumstances were not present at the time Long touched plaintiff's shoulders.

Supreme Court and the dissent appear to be of the opinion that in determining whether there has been a forcible touching pursuant to Penal Law § 130.52(1), one should look to any prior relationship between the parties, including any allegation of a history of prior sexual abuse, sexual misconduct or sexual degradation. There is no reading of the statute that would support this position. Moreover, such a reading runs afoul of the plain language and intent of the statute (see People v Dondorfer, — NY3d —, 2026 NY Slip Op 00823, *1[2026]; People v Roberts, 31 NY3d 406, 418 [2018]; People v Ditta, 52 NY2d 657, 661 [1981]).

Contrary to the dissent's contention, this determination in no way suggests that "societal norms require victims of sexual assault and harassment to simply put aside the distress and anxiety that their abuser's current conduct triggers." Rather, we conclude that past violations do not inform the definition of "intimate part" for the purposes of Penal Law article 130.

Ultimately, accepting plaintiff's allegations as true, viewing the facts in the light most favorable to plaintiff, and affording plaintiff the benefit of every reasonable inference, we conclude that defendant's behavior in 2008 did not constitute forcible touching within the meaning of Penal Law § 130.52 (1). Without a predicate sex offense for ASA purposes, plaintiff's cause of action for intentional infliction of emotional distress was not revived (CPLR 214-j).

Accordingly, the order of Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about March 7, 2025, which denied defendant William Ivey Long's motion to dismiss the complaint as against him, should be reversed, on the law, without costs, Long's motion granted, and the complaint dismissed in its entirety as against Long.

All concur except Gesmer, J. who dissents in a separate Opinion.

Gesmer, J. (Dissenting)

[*5]

I respectfully dissent. I would find that the motion court properly denied defendant William Ivey Long's motion to dismiss because plaintiff sufficiently pleaded the elements of forcible touching under Penal Law § 130.52(1) and therefore asserted viable claims under the Adult Survivors Act (ASA) (CPLR 214-j).

On a motion to dismiss for failure to state a cause of action, we treat the facts alleged in the complaint as true and view them in the light most favorable to plaintiff in order to determine only whether the allegations fit within any cognizable legal theory (see Rushaid v Pictet & Cie, 28 NY3d 316, 327 [2016]). I find that the facts in the complaint satisfy that standard. Specifically, the complaint alleges the following facts.

Defendant Long is a widely acclaimed, award-winning costume designer for Broadway shows. Among his illustrious positions, he directed and supervised an annual summer theatrical production at defendant Roanoke Island Historical Association (RIHA) in North Carolina. Plaintiff and defendant Long met in the summer of 2000, when plaintiff, then a college student at Virginia Commonwealth University, was hired to work under Long's supervision as a wardrobe/stitcher for the production. Watson was overjoyed to have the opportunity to work for Long, as he hoped the experience he would gain could help him start his own career in the theater industry.

When they first met, Long asked plaintiff how old he was. When plaintiff responded that he was 19, Long replied, "No, you're not. You're a fifteen-year-old boy!" Long then winked at plaintiff and walked away. During that summer, allegations spread through the program that one of Long's associates was engaging in sexual harassment against other program staff members. In response, Long called a meeting of the costuming department. At the meeting, he screamed at plaintiff and his coworkers that, "In the American theater, there is no such thing as sexual harassment. No jury in America would find someone guilty of sexual harassment in our business. We're all pimps and whores!"

[*6]

Plaintiff worked under Long at RIHA during the next three summers. At the beginning of his second summer, plaintiff was given an unexpected promotion and pay raise for no apparent reason. He was told that Long was responsible for it, which demonstrated to plaintiff that Long could and did exercise power over him. Long's behavior toward plaintiff became increasingly inappropriate during that summer and the following summer. For example, Long invited him to Long's vacation home for weekends, where the still underage plaintiff was plied with alcohol to the point of heavy intoxication. On one occasion, in front of plaintiff and coworkers, Long licked his lips while describing plaintiff's sexual activities with Long's studio associate. During the next summer, Watson received more invitations to Long's North Carolina home where he was dazzled by the celebrities and the lavish entertaining. In 2002, at one of these parties near Long's home, plaintiff became visibly intoxicated. Long then took plaintiff to his nearby home, gave plaintiff additional alcohol that plaintiff believes Long had drugged, and then sexually assaulted him.

Plaintiff was employed by RIHA in the same capacity in the summer of 2003 but did not have any further interactions with Long. After that, plaintiff did not see Long again until 2008, when Long entered a costume shop in New York City where plaintiff was working. Plaintiff tried to avoid Long by staying in his office, but when he had to leave his office, he encountered Long in the hallway. Long grabbed plaintiff by his shoulders, put his face inches from plaintiff's face, and then took plaintiff's cheeks between his hands and said words to the effect of "My! Don't you look great. You've finally gone through puberty!" Long then winked at plaintiff and walked away.

This incident of being physically accosted by his rapist caused plaintiff extreme anxiety. He was so deeply traumatized that he began shaking visibly and hyperventilating. His distress was obvious to one of his coworkers, who made sure that plaintiff did not again cross paths with Long. Plaintiff was so disturbed by the event that he limited his career as a costumer for Broadway shows to avoid running into Long again and now works only in costume shops that do not permit Long to enter.

Plaintiff commenced this action on November 22, 2023, under the ASA, which created a revival window within which victims could file otherwise time-barred civil actions to seek compensation for the harm they suffered as a result of their abusers engaging in conduct which constitutes a sexual offense as defined in article 130 of New York's Penal Law. The law applies where the victim was 18 or older at the time of the conduct.

[*7]

Plaintiff asserts that Long's actions in 2008 constitute the criminal offense of forcible touching under Penal Law § 130.52(1), which provides that a person is guilty of forcible touching when he "intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire. . . . [F]orcible touching includes squeezing, grabbing or pinching."

Long moved to dismiss the complaint for failure to state a cause of action (CPLR 3211[a][7]). Plaintiff opposed. The motion court denied the motion for the reasons set forth on the record following oral argument. Long appeals.

Long argues that the complaint should have been dismissed because plaintiff's shoulders and cheeks are not "sufficiently personal or private" parts of his body to qualify as "intimate" under Penal Law § 130.52(1). The majority adopts this argument. However, as the motion court noted, the statute itself does not limit the prohibited conduct to any particular part of the body because it does not name the body parts to which it does or does not apply. Moreover, since the plain language of the statute is disjunctive, it is clear that an "intimate" part is something other than a "sexual" part. To find otherwise would run afoul of the admonition by the Court of Appeals that, when addressing conduct that falls within the plain language of a penal statute, courts should "dispense with hypertechnical or strained interpretations" of the applicable statute (People v Ditta, 52 NY2d 657, 660 [1981]; see also People v Viau, 50 NY2d 1052, 1053 [1980]). In accordance with these principles, courts have held, when evaluating the factual allegations of Penal Law Article 130 offenses and other offenses involving unwanted or inappropriate touching, that parts of the body that are not generally considered erogenous may constitute "intimate" parts of the body, including the neck (People v Sene, 66 AD3d 427, 427-428 [1st Dept 2009], lv denied, 13 NY3d 942 [2010]; Morrison v Scotia Capital (USA) Inc., 2023 WL 8307930, *3, 2023 US Dist LEXIS 213277, *6-7, [SD NY Dec. 1, 2023, No. 21-CV-1859 (SHS)]), the waist and back (Aguilar v Wishner, __ AD3d__, 2025 NY Slip Op 07265, *3 [2d Dept 2025]), a thigh (People v Lee, 83 Misc 3d 1253[A], *3 [Sup Ct, NY County 2024]; the feet (People v Dunkley, 79 Misc 3d 703, 705-706 [Sup Ct, NY County 2023]; Morrison, 2023 WL 8307930, *3, US Dist LEXIS 213277, *7), legs (People v Graydon, 129 Misc 2d 265 [Crim Ct, NY County 1985]), navel (People v Belfrom, 124 Misc 2d 185, 188 [Sup Ct, Queens County 1984]), and, as in this case, shoulders (People v Mechebek, 80 Misc 3d 130 [App Term, 1st Dept 2023], lv denied, 40 NY3d 1081 [2023]).FN2

[*8]

I agree with the majority, that, when determining whether the part of the body touched is "intimate" within the meaning of Penal Law Section 130.52(1), courts must consider "the manner and circumstances of the touching," since "intimacy is a function of behavior and not merely anatomy" (Sene, 66 AD3d at 427-428 [internal quotation marks omitted]). Indeed, Long's counsel conceded this at oral argument before the motion court. Citing our opinion in Sene and other precedents, our colleagues in the Second Department have recently held that, where, as here, forcible touching allegations involve "a part of the body other than an anatomically sexual part, in the classic sense, [Penal Law article 130] offenses may still qualify as a predicate for an action pursuant to the ASA if the broader facts, manner, and circumstances of the touching or sexual contact involve intimacy or the alleged sexual gratification of the abuser" (Aguilar, AD3d at--, 2025 NY Slip Op 07265 at *1).

In my view, the majority improperly rejects plaintiff's assertion that "the manner and circumstances of the touching" to be considered here include plaintiff's allegation that Long had previously demeaned, harassed, and sexually assaulted him. As plaintiff's counsel argued at oral argument of the motion to dismiss, "[w]ithin that context, the grabbing of the shoulders, the intimacy of the touch of the cheeks and the moving into the face . . . does satisfy the standard under the law . . . to demonstrate that the body part was intimate."FN3

There is no support in the caselaw for the majority's assertion that the circumstances to be considered in determining whether Long forcibly touched an "intimate" part of plaintiff's body are limited to the moment of the perpetrator's actions alleged to be in violation of the statute, and that we must ignore the parties' prior relationship or any past history between the parties. Rather, when courts determine whether there has been "intimate" touching in violation of a Penal Law article 130 offense, they consider the "broader facts, manner, and circumstances" (Aguilar, --AD3d at--, 2025 NY Slip Op 07265 at *1; see also Sene, 66 AD3d at 427-428), including the relationship and history between victim and perpetrator, and the victim's perceptions based on that context (see Aguilar, --AD3d--, 2025 NY Slip Op 07265 at *1-*2, *4 [patient victim's disgust and perception that doctor perpetrator was "enjoying himself"]; Morrison, 2023 WL 8307930 at *3, 2023 US Dist LEXIS 213277, *8, [plaintiff's perception that her coworker's touching of her neck and feet was "sexual"]; Dunkley, 79 Misc 3d at 706 [adult perpetrator and child victim attending church social were complete strangers to each other, and child victim was visibly uncomfortable]).

[*9]

Indeed, as the majority notes, this Court stated in Sene that the determination of whether there has been forcible touching of an "intimate" part of the body should consider whether, "under general societal norms, the [body part] qualifies as an intimate part because it is sufficiently personal or private that it would not be touched in the absence of a close relationship between the parties" (Sene, 66 AD3d at 427). In assessing whether physical contact is in keeping with or against societal norms, the relationship and past history between victim and perpetrator are relevant, including whether they have never met, are acquaintances or coworkers, or have a long history with one another. That analysis has nothing to do with the timeframe, but rather with what is socially acceptable behavior between people in a given context. Here, the allegations that Long demeaned, harassed, and sexually assaulted plaintiff several years prior to the 2008 incident define the context in which the 2008 incident occurred. It is precisely because plaintiff alleges that Long previously groomed, sexually harassed, and raped him that Long's 2008 touching of plaintiff upset and traumatized him and caused him to hyperventilate and feel unsafe and extremely anxious. The majority's finding to the contrary implies that societal norms require victims of sexual assault and harassment to simply put aside the distress and anxiety that their abuser's current conduct triggers. Our law does not require that we reach such a conclusion, and I decline to do so.

In my view, Long's grabbing of plaintiff's shoulders and taking plaintiff's face between his hands involve touching parts of plaintiff's body that societal norms would not countenance between strangers. These acts are even less socially acceptable, and more horrifically intimate, under the circumstances described in the complaint. Given the allegation that Long previously sexually assaulted plaintiff, whom he had called "a fifteen-year-old boy," Long's 2008 grabbing and touching plaintiff, putting his face inches from plaintiff's, and exclaiming that plaintiff had "finally gone through puberty" together are circumstances under which Long's actions constitute forcible touching of plaintiff's "intimate parts for the purpose of degrading or abusing [him], or for the purpose of gratifying the actor's sexual desire" (Penal Law § 130.52[1]). Accordingly, giving every reasonable inference in plaintiff's favor, as we must, I would find that the allegations in the complaint sufficiently allege forcible touching, and would therefore affirm the motion court.

Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered on or about March 7, 2025, reversed, on the law, without costs, Long's motion granted, and the complaint dismissed in its entirety as against this defendant.

Opinion by Webber, J.P. All concur except Gesmer, J. who dissents in a separate Opinion.

Webber, J.P., Gesmer, Higgitt, Michael, Chan, JJ.

[*10]

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 12, 2026

Footnotes

Footnote 1

Plaintiff additionally asserted a negligent hiring claim against RIHA, which is not a subject of this appeal.

Footnote 2

My colleagues in the majority distinguish these cases on the basis that they "involved contemporaneous sexualized circumstances." This overlooks that plaintiff in this case argues that Long's history of grooming, sexual harassing and assaulting plaintiff, along with Long's comment about plaintiff having "finally gone through puberty" while forcibly touching his face and shoulders, constitutes the context which made Long's 2008 actions "intimate" and inappropriate, or, to use the majority's term, "sexualized." Furthermore, the majority reads into Penal Law § 130.52(1) a requirement of contemporaneity that does not appear in the statute and which violates the Court of Appeals' admonition against "hypertechnical or strained interpretations" of penal statutes (Ditta, 52 NY2d at 660). That holding was made when the Court of Appeals was interpreting a penal statute criminalizing sexual abuse, as we are doing here. The majority also read into Penal Law § 130.52(1) a requirement of sexualized circumstances, when the statute expressly provides that forcible touching of an "intimate," but not necessarily sexual, part of the body for the purpose of 'degrading or abusing' the victim would fall within the statute.

Footnote 3

Had plaintiff cross-appealed, I would find that the motion court erred when it determined that the allegation that Long put his hands on plaintiff's cheeks was insufficient to establish forcible touching. The motion court made this ruling because it interpreted applicable caselaw to require "more than just a mere touch," and "something with pressure." The complaint does not specify how firmly Long "touched" plaintiff's cheeks. The comparison in the complaint to a grandmother's compression of a grandchild's cheeks between her hands implies that there was some pressure. The case cited by the motion court, People v Guaman (22 NY3d 678 [2014]), actually supports a finding that Long's act of taking plaintiff's face in his hands constituted forcible touching. In Guaman, the Court of Appeals held that the examples set out in the statute of "squeezing, grabbing or pinching" were

"intended by the legislature to signal a low threshold for the forcible component of this crime's actus reus. Accordingly, we hold that, when done with the relevant mens rea, any bodily contact involving the application of some level of pressure to the victim's . . . intimate parts qualifies as a forcible touch within the meaning of Penal Law § 130.52" (22 NY3d at 684).

Furthermore, the complaint's description of Long's taking plaintiff's face in his hands permits an inference that it was done "for the purpose of degrading" plaintiff (Penal Law § 130.52[1]). Therefore, were the issue before us, I would find that plaintiff's claim that Long took plaintiff's cheeks between his hands also sufficiently pleads forcible touching to survive a motion to dismiss.